**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| **JOSEPH HAUSER,** *Individually and on Behalf of All Others Similarly Situated*, | **Civil Action Nos.** |
| Plaintiff, | **25-5322** |
| vs. | **25-12983** |
| **ORGANON & CO.**, **KEVIN ALI** and **MATTHEW WALSH,** | **Hon. Julien Xavier Neals, U.S.D.J.** |
| Defendants. | **Hon. Cari Fais, U.S.M.J.** |
| **BARRY J. LERNER,** *Individually and on Behalf of All Others Similarly Situated*, | **OPINION** |
| Plaintiff, | |
| vs. | |
| **ORGANON & CO.**, **KEVIN ALI, MATTHEW WALSH,** and **JUAN CAMILO ARJONA FERREIRA,** | |
| Defendants. | |

**CARI FAIS, United States Magistrate Judge**

Before the Court are four competing Motions for Consolidation of Related Actions,[1] Appointment as Lead Plaintiff, and Approval of Lead Counsel pursuant to the Private Securities Litigation Reform Act of 1995 ("PSLRA").  (Dkt. Nos. 14, 15, 19, and 21).[2]  All of the movants except

---

[1] The related actions are *Hauser v. Organon & Co.*, No. 25-cv-5322 ("*Hauser*") and *Lerner v. Organon & Co.*, No. 25-cv-12983 ("*Lerner*") (collectively, the "Related Actions").

[2] Unless otherwise stated, all citations to docket entries refer to *Hauser*.  The Motion for Appointment as Lead Plaintiff and Approval of Lead Counsel filed in *Lerner* by the Michigan Regional Council of

1

for Teamsters Local 710 Pension Fund ("Teamsters 710") subsequently filed notices conceding that they lack the largest financial interest of the lead plaintiff candidates and therefore do not oppose the competing motions for lead plaintiff. (*See* Notices of Non-Opposition, Dkt. Nos. 27, 28, and 30). For the reasons below, the Related Actions shall be consolidated and Teamsters 710—which has the largest financial interest and satisfies the other requirements under the PSLRA—shall be appointed as Lead Plaintiff. The Court further appoints Teamsters 710's counsel, Robbins Geller Rudman & Dowd LLP and Cohen Milstein Sellers & Toll PLLC, as Lead Counsel.

## I.        BACKGROUND

The Court recites only the facts pertinent to its decision. The *Hauser* and *Lerner* cases are putative securities fraud class action lawsuits brought on behalf of investors who purchased Organon & Co. ("Organon") publicly traded securities between November 3, 2022 and April 30, 2025 (the "Class Period").[3] Organon develops and delivers health solutions through prescription therapies and medical devices. Both complaints assert claims against Organon and certain of its executives under Sections 10(b) and 20(a) of the Securities Exchange Act of 1934 and Rule 10b-5 promulgated thereunder. Plaintiffs generally allege that throughout the Class Period, Defendants[4] made false and/or misleading statements and/or failed to disclose that: (i) Organon faced a significant risk of loss of

---

Carpenters Annuity Fund is duplicative of its motion filed in *Hauser*. (Dkt. No. 21).

[3] *Hauser* alleges a class period between October 31, 2024 and April 30, 2025 (*see* Compl. ¶ 1, Dkt. No. 1), while *Lerner* alleges a class period between November 3, 2022 and April 30, 2025. (*See* Compl. ¶ 1, *Lerner*, No. 25-cv-12983, Dkt. No. 1). Where there are two potential class periods, courts generally use the longer class period in the analysis. *See, e.g.*, *Rauch v. Vale S.A.*, 378 F. Supp. 3d 198, 208 n.11 (E.D.N.Y. 2019) ("For the purposes of appointing lead plaintiff in cases involving two potential class periods, courts use the longer class period in the analysis."); *Hom v. Vale, S.A.*, No. 15-cv-9539, 2016 WL 880201, at *4 (S.D.N.Y. Mar. 7, 2016) ("[T]he use of the longer, more inclusive class period is proper for purposes of the present motion because the longer class period encompasses more potential class members and damages."). The class period for purposes of the Court's analysis is therefore November 3, 2022 to April 30, 2025.

[4] Both *Lerner* and *Hauser* bring claims against Defendants Organon & Co., Kevin Ali, and Matthew Walsh. Juan Camilo Arjona Ferreira is named as a Defendant in *Lerner* only.

exclusivity and price erosion as to its key product, Nexplanon; (ii) as a result, Organon's long-term Nexplanon sales growth was not as strong as Defendants portended; (iii) Organon was not on track to achieve the free cash flow required to sustain its outsized dividend; (iv) Organon was also not on track to maintain 4.0x debt leverage; (v) as such, Organon might not be able to maintain its corporate debt ratings at their then-current Class Period levels; and (vi) therefore, Organon lacked a reasonable basis to report its Class Period business metrics and financial projections. (*See* Compl. ¶ 23, Dkt. No. 1; Compl. ¶ 76, *Lerner*, No. 25-cv-12983, Dkt. No. 1).

The first-filed *Hauser* action was initiated on May 23, 2025. In accordance with the PSLRA, counsel for Plaintiff published notice of the filing of the class action complaint in Global Newswire on May 23, 2025. (Dkt. No. 14-3). The notice advised Organon shareholders of the pendency of the action, the claims asserted therein, the time period of the action, and their right to seek appointment to serve as lead plaintiff on or before July 22, 2025. *Id*.

On July 22, 2025, six movants, Teamsters 710, Operating Engineers Construction Industry and Miscellaneous Pension Fund ("Operating Engineers"), Nova Scotia Health Employees' Pension Plan ("NSHEPP"), Michigan Regional Council of Carpenters Annuity Fund ("Annuity Fund"), Walter Alomar, and Thomas Janikian, timely moved to be appointed lead plaintiff. (Dkt. Nos. 14, 15, 16, 19, 20, and 21). Alomar and Janikian subsequently filed notices conceding that they did not appear to have the largest financial interest in the action as defined by the PSLRA. (Dkt. Nos. 22 and 23). Alomar withdrew his competing motion, and the Court administratively terminated Janikian's motion upon receipt of his notice of non-opposition. (Dkt. No. 26). Operating Engineers, NSHEPP, and Annuity Fund filed notices informing the Court that they did not appear to have the largest financial interest in the action as defined by the PSLRA and had no opposition to the competing Motions for Appointment as Lead Plaintiff. (Dkt. Nos. 27, 28, and 30). Teamsters 710's motion is unopposed.

3

## II.        DISCUSSION

### A.        Motions to Consolidate

The Court must first determine whether to consolidate related actions before appointing a lead plaintiff and approving lead counsel.  15 U.S.C. § 78u-4(a)(3)(B)(ii).  All movants seek to consolidate the *Hauser* and *Lerner* matters, and there is no opposition to consolidation.  Under Federal Rule of Civil Procedure 42(a) consolidation is appropriate when actions "involve a common question of law or fact."  Fed. R. Civ. P. 42(a).  "Neither the PSLRA nor Rule 42 requires that pending suits be identical before they can be consolidated."  *In re Lucent Tech., Inc. Sec. Litig.*, 221 F. Supp. 2d 472, 480 (D.N.J. 2001).  Consolidation is routinely granted where securities class actions "involve common questions of law and fact, and consolidation will promote efficiency and avoid unnecessary costs or delay."  *City of Warren Gen. Emps.' Ret. Sys. v. Celgene Corp., Inc.*, No. 18-cv-4772, 2018 WL 4629570, at *1 (D.N.J. Sept. 26, 2018).

The Related Actions are appropriate for consolidation.  The *Hauser* and *Lerner* matters assert the same claims on behalf of Organon investors, "based on substantially the same alleged conduct" during overlapping class periods.  *See Patel v. Coinbase Glob., Inc.*, No. 22-cv-4915, 2022 WL 17582549, at *2 (D.N.J. Dec. 12, 2022).  Because of the common legal and factual issues and overlapping discovery, consolidation will promote efficiency and conserve the resources of the parties, witnesses, and the Court.  Moreover, the parties do not dispute that consolidation is appropriate.  Although the *Lerner* action asserts a longer class period than the class period in *Hauser*, and *Lerner* names an additional Defendant, common questions of law and fact predominate over these discrepancies, and the Court finds that consolidation is appropriate.  *See id.* (finding common questions of law and fact predominated over the "minor discrepancies" of one action naming an additional defendant and asserting a longer class period); *Rauch*, 378 F. Supp. 3d at 205 (holding consolidation was not barred by the presence of an additional defendant); *In re Cendant Corp. Litig.*, 182 F.R.D. 476,

4

478 (D.N.J. 1998) ("[D]iffering class periods alone will not defeat consolidation or create a conflict.").

Accordingly, the above-captioned actions are consolidated.

### B.    Motions to Appoint Lead Plaintiff

In consolidated securities class action cases, the PSLRA requires the Court to appoint a lead plaintiff for the consolidated actions "[a]s soon as practicable after [the consolidation] decision is rendered."  15 U.S.C. § 78u-4(a)(3)(B)(ii).  None of the competing lead plaintiffs oppose Teamsters 710's motion.  Nonetheless, even where a motion to appoint lead plaintiff is unopposed, courts "have an obligation to review applications for the appointment of lead plaintiff and to appoint as lead plaintiff the member or members of the purported plaintiff class who are '*most* capable of [adequately] representing the interests of the class members.'"  *Lewis v. Lipocine Inc.*, No. 16-cv-4009, 2016 WL 7042075, at *3 (D.N.J. Dec. 2, 2016) (quoting *In re Nice Sys. Secs. Litig.*, 188 F.R.D. 206, 221 (D.N.J. 1999)).  The Court will therefore analyze whether Teamsters 710 is the most adequate plaintiff within the meaning of the PSLRA.

The PSLRA establishes the framework courts use to select a lead plaintiff in class actions brought under the federal securities laws.  The Court must "appoint as lead plaintiff the member or members of the purported plaintiff class that the court determines to be most capable of adequately representing the interests of class members (hereinafter . . . the 'most adequate plaintiff')."  15 U.S.C. § 78u-4(a)(3)(B)(i).  There is a rebuttable presumption that the most adequate plaintiff is the person or group of persons that (1) has either filed the complaint or made a motion in response to the notice to the class; (2) has the largest financial interest in the relief sought by the class; and (3) otherwise satisfies the requirements of Federal Rule of Civil Procedure 23.  *Fields v. Biomatrix, Inc.*, 198 F.R.D. 451, 456 (D.N.J. 2000); 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I).  This presumption may be rebutted, however, upon a showing that the movant "will not fairly and adequately protect the interests of the class" or "is subject to unique defenses that render such plaintiff incapable of adequately representing the class."  15 U.S.C.

5

§ 78u-4(a)(3)(B)(iii)(II).  Rule 23 requires that a party or parties seeking to represent a class (1) "have claims or defenses that are typical of the claims or defenses of the class," referred to as the "typicality requirement," and (2) "be able to fairly and adequately protect the interests of the class," referred to as the "adequacy requirement."  *In re Cendant Corp. Litig.*, 264 F.3d 201, 263 (3d Cir. 2001) (marks omitted).

### 1.    Notice to the Class

Before a court may appoint a lead plaintiff, it "has an independent duty to scrutinize the published notice and ensure that the notice comports with the objectives of the PSLRA, that is, encouraging the most adequate plaintiff, the plaintiff with the largest financial stake in the outcome of the litigation, to come forward and take control of the litigation."  *Lewis*, 2016 WL 7042075, at *3 (quoting *Lifestyle Invs., LLC v. Amicus Therapeutics, Inc.*, No. 15-cv-7448, 2016 WL 3032684, at *4 (D.N.J. May 26, 2016)).  Section 78u-4(a)(3) of the PSLRA requires that no more than 20 days after the complaint is filed, notice:

> (1) be properly published; (2) advise members of the putative class of the relevant details of (a) the pendency of the action, (b) the claims asserted therein, and (c) the period of the action; and (3) inform putative class members that they have the right to move the district court to serve as lead plaintiff in the class action.

*Id.* (quoting *Lifestyle*, 2016 WL 7042075, at *4).  Any prospective lead plaintiff must file a motion for appointment as lead plaintiff within 60 days of the publication of notice of the securities class action.  15 U.S.C. § 78u-4(a)(3)(B)(iii)(I)(aa).

Here, counsel in the first-filed action published notice of the filing of the class action complaint in Global Newswire on May 23, 2025.  (Dkt. No. 14-3).  The notice announced the pendency of the action, listed the claims, specified the class period, and advised putative class members that they had 60 days from the date of the notice (until July 22, 2025) to file a motion to serve as lead plaintiff in the lawsuit.  (*Id.*).  The Court finds that the notice complied with the PSLRA's requirements.  *See* 15 U.S.C.

§ 78u-4(a)(3)(A).  All movants filed their motions for appointment as lead plaintiff on July 22, 2025, the last day within the 60-day deadline, and thus satisfied the procedural requirements of the PSLRA.

### 2.    Largest Financial Interest

To determine which potential lead plaintiff has the "largest financial interest," the Third Circuit has held that courts "should consider, among other things: (1) the number of shares that the movant purchased during the putative class period; (2) the total net funds expended by the plaintiffs during the class period; and (3) the approximate losses suffered by the plaintiffs." *In re Cendant.*, 264 F.3d at 262. "[C]ourts in this circuit have accorded the third element, the largest financial loss, the greatest weight." *Patel*, 2022 WL 17582549, at *2 (quoting *Roby v. Ocean Power Tech., Inc.*, No. 14-cv-3799, 2015 WL 1334320, at *5 (D.N.J. Mar. 17, 2015)); *see also Halman Aldubi Provident & Pension Funds Ltd. v. Teva Pharm. Indus. Ltd.*, 529 F. Supp. 3d 385, 396 (E.D. Pa. 2021) ("Of these factors, courts focus most strongly on the losses suffered.").

By all three metrics, Teamsters 710 has the largest financial interest.  Teamsters 710 claims that it purchased 149,148 shares, expended $2,737,322 in net funds, and suffered an approximate loss of $1,397,111.  (Dkt. No. 29 at 3).  None of the competing lead plaintiffs assert a comparable financial interest.  The other movants claim between 25,109 and 101,600 shares purchased, net funds expended ranging from $425,724 to $1,864,702, and approximate losses between $191,974 and $903,843.  *Id*. Accordingly, the Court finds that Teamsters 710 has the largest financial interest of the movants.

### 3.    Typicality and Adequacy

At the lead plaintiff selection stage, all that is required to satisfy Rule 23 is a "*prima facie* showing of typicality and adequacy." *In re Cendant*, 264 F.3d at 263-64.  To demonstrate typicality, a movant must show that its circumstances are not "markedly different" from those of the putative class and that the legal theory upon which its claims are based does not "differ from that upon which the claims of other class members will perforce be based." *Id.* at 265 (quotation and alterations omitted).

Here, Teamsters 710 purchased Organon securities during the Class Period and seeks damages based on alleged omissions and/or misrepresentations by Defendants.  Because Teamsters 710's claims and the claims of other class members arise out of the same course of events and are based on the same legal theories, Teamsters 710 satisfies the typicality requirement.

With respect to adequacy, the Court considers whether the movant "has the ability and incentive to represent the claims of the class vigorously, whether it has obtained adequate counsel, and whether there is a conflict between the movant's claims and those asserted on behalf of the class." *In re Cendant*, 264 F.3d at 265 (quotation and alterations omitted).  The Court finds that Teamsters 710 meets the adequacy requirement under Rule 23.  Teamsters 710 is an experienced litigant in securities fraud class actions, and it claims significant financial losses that will motivate it to fully prosecute this action. (Dkt. No. 14-1 at 13-14); *In re Milestone Scientific Sec. Litig.*, 183 F.R.D. 404, 416 (D.N.J. 1998) (noting that a large financial stake in the litigation provides an adequate incentive to vigorously pursue the action).  Having fully reviewed proposed class counsel's qualifications, the Court finds that Teamsters 710 has selected sophisticated and qualified counsel.  (Dkt. No. 14-1 at 14-18).  Finally, there is nothing before the Court to suggest that there is a conflict between Teamsters 710's claims and those of the proposed class.  Having made a *prima facie* showing of both typicality and adequacy under Rule 23 and having the largest financial interest in the relief sought in this action, Teamsters 710 is entitled to the presumption of being the "most adequate plaintiff" under the PSLRA.

### 4.    Rebuttal of the Presumption

Once the court identifies a presumptive lead plaintiff, it must then address whether the presumption has been rebutted.  *In re Cendant*, 264 F.3d at 268.  The two primary grounds for rebutting the presumption of adequacy under the PSLRA are that the plaintiff either "will not fairly and adequately protect the interests of the class" or is "subject to unique defenses that render such plaintiff incapable of adequately representing the class."  15 U.S.C. § 78u-4(a)(3)(B)(iii)(II).  "If no class

member succeeds in rebutting the presumption, then the district court should appoint the presumptive lead plaintiff as the lead plaintiff." *In re Cendant*, 264 F.3d at 268. As no competing movant has sought to rebut the presumption that Teamsters 710 is the most adequate plaintiff under the PSLRA, the Court will appoint Teamsters 710 to serve as Lead Plaintiff in this litigation.

### C.      Motion to Approve Lead Counsel

The PSLRA permits the lead plaintiff in a securities fraud class action to select and retain lead counsel, subject to the Court's approval. 15 U.S.C. § 78u-4(a)(3)(B)(v). Teamsters 710 has selected Robbins Geller Rudman & Dowd LLP and Cohen Milstein Sellers & Toll PLLC to serve as lead counsel. No party has challenged either firm's fitness. As evidenced by both firms' substantial experience litigating securities fraud class actions, (*see* Dkt. No. 14-1 at 14-18), Teamsters 710's counsel are qualified to pursue relief on behalf of the class. Accordingly, the Court approves Teamsters 710's choice of counsel, and Robbins Geller Rudman & Dowd LLP and Cohen Milstein Sellers & Toll PLLC are designated as Lead Counsel.

### III.      CONCLUSION

For the reasons set forth above, Teamsters 710's Motion for Consolidation of Related Actions, Appointment as Lead Plaintiff, and Approval of its Selection of Counsel (Dkt. No. 14) is **GRANTED**. The above-captioned matters are consolidated. The competing motions in *Hauser v. Organon & Co.*, No. 25-cv-5322 (Dkt. Nos. 15, 19, and 21) are **DENIED**. The competing motion in *Lerner v. Organon & Co.*, No. 25-cv-12983 (Dkt. No. 5) is **DENIED**.

Dated:  March 6, 2026

*s/ Cari Fais*
Hon. Cari Fais
United States Magistrate Judge

9